UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FRANCISCO MARTINEZ,

    Plaintiff,

v.                                                               Case No. 23-C-371

AVAN GONZALES, REBECCA WARREN
MELISSA BARKER, EMILY BLONZINSKI,
KENECHI ANULIGO, NATHAN THOMPSON,
and LADONNE SALENTINE,

    Defendants.

## SCREENING ORDER

    Plaintiff Francisco Martinez, who is currently serving a federal prison sentence at Oxford Federal Correctional Institution, is representing himself in this 42 U.S.C. §1983 case. On March 22, 2023, this action was transferred to this Court from the U.S. District Court for the Western District of Wisconsin. On April 21, 2023, Martinez filed a second amended complaint along with a motion to appoint counsel. Dkt. Nos. 35, 36. This order screens the second amended complaint, as required by 28 U.S.C. §1915A, and resolves the motion.

### SCREENING OF THE SECOND AMENDED COMPLAINT

    The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure

and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

### ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

Martinez explains that during a fight with another inmate at the Brown County Jail on April 14, 2020, he injured his hand. Martinez asserts that there was a hard lump on his hand and that he experienced excruciating pain whenever he used it. About a month later, "a jail provider" diagnosed him as having a ganglion cyst and prescribed pain medication. Martinez asserts that time would reveal that his injury was misdiagnosed; he actually had a broken bone in his hand.

2

He explains that the provider simply guessed and did not perform any tests to properly diagnose his injury. Dkt. No. 35.

For months, Martinez allegedly sent numerous requests about his injury, complaining that he could not use his hand without extreme pain and that the prescribed pain medications were not working. He also requested that further testing be done to diagnose the source of his pain. Martinez alleges that, over the course of about a year, Defendants Avan Gonzales, Rebecca Warren, Nathan Thompson, and Emily Blozinski all downplayed or ignored his complaints, persisted with ineffective treatments, and/or delayed pursuing diagnostic/follow-up testing. Finally, following an MRI, it was determined that Martinez's hand was broken. According to Martinez, if his injury had been diagnosed within a few months, it could have been repaired, but because so much time had passed, the injury was permanent, leaving him disabled and in pain. Martinez explains he had surgery in an effort to reduce the pain, but it was unsuccessful. Dkt. No. 35.

## THE COURT'S ANALYSIS

At the relevant time, Martinez was a pretrial detainee,[1] so his claims arise under the Fourteenth Amendment. Under *Miranda v. County of Lake*, such claims are subject only to the objective unreasonableness standard. 900 F.3d 335, 352 (7th Cir. 2018). To state a claim, the Court must be able to reasonably infer that Defendants "acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [plaintiff's] case" and that the challenged conduct was objectively unreasonable. *McCann v. Ogle County, Ill.*, 909 F.3d 881, 886 (7th Cir. 2018) (citations omitted).

---

[1] Judgment was entered against Martinez on April 21, 2021, in *U.S. v. Martinez*, Case. No. 19-CR-151 (E.D. Wis.).

Martinez's allegations suggest that, despite knowing that Martinez was in pain and had limited to no use of his hand, Gonzalez, Warren, Thompson, and Blozinski repeatedly ignored his requests for further diagnostic testing, downplayed his complaints of pain, and/or persisted with ineffective treatment options. At this stage, Martinez's allegations are sufficient for him to proceed on claims that Gonzalez, Warren, Thompson, and Blozinski's actions were objectively unreasonable.

Martinez does not, however, state a claim against Melissa Barker based on allegations that, while Martinez spoke to Thompson in his cell on June 23, 2020, Barker was "very mad and irritated" at him for no reason and "just randomly spazz[ed] out on [him] during the conversation." Dkt. No. 35 at 10. According to Martinez, Thompson agreed to order an x-ray for his hand, even though Barker "was VERY unprofessional," ignored his complaints of pain, and rudely yelled at him. While undoubtedly unpleasant, Barker's alleged verbal harassment is not so severe as to amount to a constitutional violation. *See, e.g., Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) (explaining that "fleeting" verbal harassment, while never appropriate, is too limited to have the impact required to state a constitutional claim). And, given that Thompson examined Martinez's hand and ordered an x-ray despite Barker's unwanted commentary, Martinez was not harmed by Barker's allegedly dismissive attitude.

Martinez also fails to state a claim against LaDonne Salentine, who allegedly failed to order a rush on his MRI and who scheduled his elective surgery for two months after he received the MRI results. Dkt. No. 35 at 21-22. First, Martinez has not alleged that Salentine, who he describes as an administrative assistant, had the authority to order a rush on an MRI or that she had control over the surgeon's availability. There is no suggestion that Salentine was involved in Martinez's care in any capacity other than an administrative capacity. Further, Martinez acknowledges that

4

his hand had been injured for many months by the time an MRI was ordered. Given that his injury was not emergent, the Court cannot reasonably infer that failing to order a rush MRI was objectively unreasonable. Every prisoner wants to be moved to the top of the list, but nothing in Martinez's allegations suggests that his injury was of such a nature that it was objectively unreasonable not to prioritize him above everyone else who was waiting for an MRI. Finally, Martinez asserts that the surgery he received did not relieve his pain. He therefore suffered no harm from having to wait for a surgery that was ultimately unsuccessful.

Finally, the Court will dismiss Kenechi Anuligo pursuant to Fed. R. Civ. P. 21. Martinez seeks to state a claim against Anuligo based on allegations that he improperly prescribed him medication for anxiety and depression after he complained about a heart problem. Dkt. No. 35 at 17. Anuligo is not properly joined in this action because this claim does not arise out of the same event or incident as the claims against Gonzalez, Warren, Thompson, and Blozinski. *See* Fed. R. P. 20. If Martinez wants to pursue claims related to the improper treatment of his heart condition, he must do so in a separate case. Martinez is reminded that he must pay the filing fee for every case he brings.

## MOTION TO APPOINT COUNSEL

On April 21, 2023, Martinez filed a motion to appoint counsel. He asserts that he has limited education and limited access to legal resources. He states that he has been trying to hire a lawyer but has been unsuccessful. He also states that he does not understand how to participate in discovery. In a civil case, the Court has discretion to recruit a lawyer for individuals who cannot afford to hire one. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866–67 (7th Cir. 2013). In exercising its discretion, the Court considers: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain

counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007)).

Martinez appears to have satisfied the first prong by making reasonable efforts to obtain counsel without the Court's help. Nevertheless, the Court will deny his motion because he also appears capable of representing himself during the early stages of litigation. When considering whether a plaintiff has the capacity to represent himself, the Court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." *Pennewell v. Parish*, 923 F.3d 486, 491 (7th Cir. 2019). Martinez's filings to date have been clear, well organized, and easy to understand. Contrary to his characterization, his claim is straightforward and will largely turn on his recollection of his and Defendants' interactions. Given that his amended complaint clearly explains what happened and why he believes his rights were violated, the Court has confidence that he can prepare and respond to discovery requests.

After Defendants respond to the second amended complaint and after the Court enters a scheduling order, Martinez may ask Defendants to provide him with information that he believes he needs to prove his claims. He may ask up to twenty-five written questions (called interrogatories in the Federal Rules) per Defendant and he may ask for documents that Defendants have in their possession. *See* Fed. R. Civ. P. 33 and 34; Civil L. R. 33. Defendants may object to a request to the extent they believe the request is improper. If Martinez does not agree with an objection, he should try to informally resolve the dispute with Defendants' lawyer. *See* Civil L. R. 37. Parties can often resolve discovery disputes without the Court's involvement. If he and

Defendants' lawyer are unable to resolve the dispute on their own, he may file a motion asking the Court to get involved. If he does so, he must describe the discovery dispute in detail and explain what efforts the parties made to resolve the dispute before involving the Court. Although Martinez should direct his discovery requests to Defendants, he must mail them to their lawyer.

The Court acknowledges that Martinez, like nearly all prisoners, has little civil litigation experience. The Court encourages him to review the guide enclosed with this order. The Court prepared the guide to provide prisoners with helpful information about the litigation process. Finally, many of the challenges prisoners face such as limited law library time and needing time to process and respond to motions can be addressed by extending deadlines. If Martinez asks the Court to extend a deadline, he should explain why he needs more time and how much more time he needs. The Court will not needlessly delay resolution of this case, but upon a showing of good cause, the Court will be responsive to requests for more time.

The Court finds that Martinez is capable of representing himself during the early stages of the case. If new challenges arise that he does not believe he can overcome on his own, he may renew his motion. If he does so, he should be specific about what challenges he faces and what efforts he has made to overcome those challenges.

**IT IS THEREFORE ORDERED** Melissa Barker and LaDonne Salentine are **DISMISSED** from this action because Martinez fails to state a claim against them and Kenechi Anuligo is **DISMISSED** from this action because he is not properly joined in this action.

**IT IS FURTHER ORDERED** that Martinez's motion to appoint counsel (Dkt. No. 36) is **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the second amended complaint, Dkt. No. 35, and this order upon Avan Gonzalez, Rebecca Warren,

Nathan Thompson, and Emily Blozinski pursuant to Federal Rule of Civil Procedure 4. Martinez is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2)–(3). Although Congress requires the Court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. The Court is not involved in the collection of the fee.

**IT IS FURTHER ORDERED** that Avan Gonzalez, Rebecca Warren, Nathan Thompson, and Emily Blozinski shall file a responsive pleading to the second amended complaint.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiff must submit the original document for each filing to the Court to the following address:

> Honorable William C. Griesbach
> c/o Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 125 S. Jefferson Street, Suite 102
> Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Martinez is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Martinez may find useful in prosecuting this case.

Dated at Green Bay, Wisconsin this 3rd day of May, 2023.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge